IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROBERT JACKSON,
    Plaintiff,
v.                      *    CIVIL ACTION NO. WDQ-12-3549

BOBBY SHEARIN,
    Defendant.

\*\*\*

## MEMORANDUM

Pending is Defendant Bobby Shearin's Motion to Dismiss, or in the alternative Motion for Summary Judgment. ECF No. 12. The Plaintiff has responded. ECF No. 17. Upon review of papers and exhibits filed, the Court finds an oral hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons stated below, the dispositive motion filed by the Defendant will be granted.

## Background

The Plaintiff alleges while housed at the North Branch Correctional Institution ("NBCI") from May 19, 2011 through September 15, 2011, he was denied the use of a fan while on the segregation unit. The Plaintiff states that he has chronic asthma and NBCI was suffering from severe heat at that time. He alleges that he had a medical order to use the fan and the Defendant and Commissioner of Correction both found "in a tardy fashion" that he should have been permitted to use it. ECF No. 1.

The Plaintiff's medical records demonstrate that on May 17, 2011, he was evaluated by Dr. Colin Ottey in the chronic care clinic regarding his history of chronic bronchitis. ECF No. 12, Ex. 1, p. 28-30. At that time, the Plaintiff reported that he had no cough, shortness of breath, or chest tightness. It was noted that he used his inhaler intermittently but had been using it more frequently

1

due to the change in weather. Dr. Ottey continued the Plaintiff on his medication and instructed him to return for follow-up in three months. *Id.* On May 24, 2011, the Plaintiff was seen by Dennis Martin, R.N. for back pain. The Plaintiff did not complain about any asthma symptoms or breathing difficulties. *Id.*, p. 32.

When seen by Dr. Ottey on June 15, 2011, the Plaintiff requested a fan due to his concerns of a "possible exacerbation of his asthma with the increased temperature in his cell." *Id.*, p. 38-41. Dr. Ottey requested that staff "please allow patient to have fan because of asthma." *Id.*, p. 41. Dr. Ottey completed a medical inmate assignment form on June 28, 2011, indicating that the Plaintiff "may have a fan x3 months." *Id.*, p. 44.

The Plaintiff submitted an Inmate Request Form to NBCI correctional staff requesting a fan for his cell. *Id.*, Ex. 4. The request was denied as inmates on disciplinary segregation are not permitted to have a fan in their cell due to the ability to disassemble the fan and turn it into a weapon. Additionally, correctional staff interpreted Dr. Ottey's June 28, 2011 inmate assignment note regarding use of a fan as permissive rather than as an order necessitating the Plaintiff's use of a fan as treatment for a diagnosed condition.[1] *Id.*

The Plaintiff submitted an Administrate Remedy Procedure request (ARP) on July 12, 2011, indicating he had been "given paperwork by a doctor to have a fan while on segregation for medical reasons" but had been denied access to a fan he already had in his property. *Id.*, Ex. 2, p. 2. The Plaintiff sought delivery of the fan to his cell and monetary damages. *Id.*

---

[1] William J. Beeman, Regional Assistant Director of Nursing at the Western Region Cumberland Complex avers that Ottey's note that the Plaintiff "may have a fan x 3 months" was "simply permissive authorization....It was not an order or prescription for Plaintiff to have a fan as treatment for a diagnosed medical condition." Beeman further states that the Plaintiff's medical records do not indicate that access to a fan was ever necessary as a form of medical treatment for the Plaintiff's asthma or any other medical condition. *Id.*, Ex. 5.

2

On the morning of July 15, 2011, the Plaintiff was evaluated by Greg Flury, P.A. The Plaintiff reported having recently been temporarily transferred to another prison, given a Qvar inhaler as a replacement for his regular albuterol inhaler, and questioned whether it was an appropriate substitute. *Id.*, Ex. 1, p. 46-48. The Plaintiff denied any other complaints concerning his asthma. *Id.* That evening, at approximately 7:00 p.m, he was seen by Dr. Ottey due to reports of chest pain. The Plaintiff's physical exam revealed mild chest discomfort upon palpation. An EKG was taken which was normal. Ottey reassured the Plaintiff regarding his condition and prescribed Tylenol for pain relief. *Id.*, p. 51-53.

On August 15, 2011, the Plaintiff filed an appeal with the Commissioner of the Maryland Department of Corrections indicating he had not received a response to his July 12, 2011 ARP regarding use of a fan. *Id.*, Ex. 2, p. 4-5.

On August 31, 2011, the Plaintiff submitted a sick call slip regarding stomach pain. He was seen by Steven Bray, R.N. on September 2, 2011. On October 1, 2011, the Plaintiff filed a sick call slip complaining of a persistent rash. He was seen on October 5 and 10, 2011 by P.A. Flury regarding this complaint. On neither occasion did the Plaintiff complain of any asthma symptoms. *Id.*, Ex. 1, p. 60-67.

On January 31, 2012, Lt. Dolly completed an ARP Case Summary recommending dismissal of the Plaintiff's ARP regarding his request for use of a fan. *Id.*, Ex. 2. Dolly found that pursuant to Maryland Department of Public Safety and Correctional Services ("DPSCS") policy inmates on disciplinary segregation are not permitted to have fans in their cells. Dolly also found that Dr. Ottey's note indicting Plaintiff "may" have a fan was not a medical order as it did not indicate that a fan was a medical necessity. *Id.*, Ex. 2, p. 6-7.

3

Warden Shearin denied Plaintiff's July 12, 2011 ARP on February 2, 2012. *Id.* p. 2. On March 26, 2012, the Commissioner found the Plaintiff's ARP meritorious in part in regard to the Warden's failure to respond to the ARP within the time established under DOC regulations. *Id.*, p. 10. The Commissioner also noted that the Plaintiff had not provide any evidence that he had provided the necessary documentation verifying use of a fan for medical reasons to his housing officer. The Commissioner concluded his review by directing the Warden "to adhere to the established time frames in accordance with DCD 185-003 and ensure staff follows medical orders for inmate health issues." The Commissioner further directed that no further action be taken through the ARP process. *Id.*

## Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the

evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

## Analysis

### Respondeat Superior

The Plaintiff's complaint against Defendant Shearin is based solely upon the doctrine of *respondeat superior*, which does not apply in §1983 claims. *See Love-Lane v. Martin*, 355 F. 3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under §1983); *see also Trulock v. Freeh*, 275 F. 3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a *Bivens* suit). Liability of supervisory officials must be "premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F. 3d 228, 235 (4th Cir. 2001), citing *Slakan v. Porter*, 737 F. 2d 368, 372 (4th Cir. 1984). Supervisory liability under § 1983 must be supported with evidence that (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff, (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices, and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994). Plaintiff has pointed to no action or inaction on the part of Defendant Shearin that resulted in a constitutional injury, and accordingly, his claims against him shall be dismissed.

### Medical Care

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) citing

*Wilson v. Seiter*, 501 U.S. 294, 297 (1991). In order to state an Eighth Amendment claim for denial of medical care, a Plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839–40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995) quoting *Farmer* 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted. *See Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2000); *citing Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

The Plaintiff has been provided medical care for his asthma. While Ottey recommended the use of a fan, use of same was not permitted under DPSCS regulations. Such recommendations are naturally subject to security concerns. The right to treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical *necessity* and not simply that which may be considered merely *desirable*." *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir.1977) (emphasis added). Correctional staff have indicated their belief, which has been confirmed by medical staff, that Dr. Ottey's note regarding the fan was permissive authorization rather than a medical order which was necessary to the Plaintiff's treatment. Moreover, the Plaintiff has failed to demonstrate any injury arising from the refusal to provide him a fan.

Administrative Remedy Process

To the extent the Plaintiff alleges there were problems with the processing of his administrative remedy requests, his claim fails. While the long standing rule has been that prisoners have no constitutional right to participate in an institutional grievance procedure, *see Adams v. Rice*, 40 F. 3d 72, 75 (4th Cir. 1994), with the passage of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), the issue is less clear. The PLRA requires exhaustion of administrative remedies before a federal action concerning prison conditions may be filed by a prisoner. The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Further clarification regarding exhaustion as a pleading requirement was announced by the Fourth Circuit in *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F. 3d 674 (4th Cir. 2005), wherein the court held, "an inmate's failure to exhaust his administrative remedies must be viewed as an affirmative defense that should be pleaded or otherwise properly

raised by the defendant." *Id.* at 681. To the extent that a prisoner's attempts to exhaust the administrative remedy process are thwarted by prison officials' misconduct, that evidence may be presented in response to the affirmative defense. *Id.* at 682. Thus, an inability to access the administrative remedy procedure based on an alleged refusal by prison officials to enforce the rules governing the process does not run afoul of the due process clause. Assuming, *arguendo*, that the Defendant did not satisfactorily investigate or respond to the Plaintiff's remedy requests in a timely fashion, the Plaintiff's claim fails as he has not alleged, much less demonstrated, any injury as a result of the alleged failure to investigate ARPs.

## Conclusion

For the reasons stated, summary judgment is granted in favor of the Defendant. A separate Order shall be entered in accordance with this Memorandum.

Date: 9/4/13

William D. Quarles, Jr.
United States District Judge